**WASHINGTON MUTUAL SAVINGS BANK and Grays Harbor Savings & Loan Association, Plaintiffs-Appellees,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellant.**

No. 72-2972.

United States Court of Appeals, Ninth Circuit.

July 12, 1973.

Payne Karr (argued), Martin T. Crowder, of Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Seattle, Wash., J. William Via, Jr. (argued), Edward

Bransilver, Gen. Counsel, Eric F. Kaplan, Atty., Fed. Deposit Ins. Corp., Washington, D. C., Arnold & Porter, Washington, D. C., for defendant-appellant.

John D. Hawke, Jr., Washington, D. C. (argued), Louis H. Pepper, of Ashley, Foster, Pepper & Riviera, Seattle, Wash., for plaintiffs-appellees.

Before CARTER, CHOY and GOOD-WIN, Circuit Judges.

CHOY, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC) appeals from an order enjoining it from withholding its approval of a bank merger. We affirm.

## I. THE CASE.

Washington Mutual Savings Bank is the largest thrift institution[1] in the State of Washington holding $744 million or 22.9% of the deposits as of June 30, 1970. Washington Mutual has its main offices in Seattle and twenty-two branches throughout the state, principally in the Seattle area.

Grays Harbor Savings & Loan Association is one of the smallest thrift institutions in Washington holding $4.7 million or 0.15% of the deposits. Grays Harbor is the fourth largest of five thrift institutions in Aberdeen, Washington and is located fifty miles from Washington Mutual's nearest branch. Because of a management succession problem, Grays Harbor sought out Washington Mutual as a merger partner in 1970. After entering into a merger agreement both banks sought approval from state and federal banking authorities.

Washington law requires the approval of the State Supervisor of Banking. 12 U.S.C. § 1828(c)(2)(C) requires the written approval of the FDIC when the acquiring bank is a nonmember insured bank.[2] Federal law also requires the FDIC to request reports on the competitive factors involved in a bank merger from the Attorney General and the two other banking agencies.[3]

The Washington State Supervisor of Banking approved the proposed merger on August 14, 1970. The FDIC field examiner, Division of Research and the FDIC Board of Review all reported

---

1. Thrift institutions in Washington are mutual savings banks and savings and loan associations.

2. 12 U.S.C. § 1828(c)(2) provides as follows:

    No insured bank shall merge or consolidate with any other insured bank or, either directly or indirectly, acquire the assets of, or assume liability to pay any deposits made in, any other insured bank except with the prior written approval of the responsible agency, which shall be—

    (A) the Comptroller of the Currency if the acquiring, assuming, or resulting bank is to be a national bank or a District bank;

    (B) The Board of Governors of the Federal Reserve System if the acquiring, assuming, or resulting bank is to be a State member bank (except a District bank);

    (C) the Corporation if the acquiring, assuming, or resulting bank is to be a nonmember insured bank (except a District bank).

    A nonmember insured bank is one insured by the FDIC but is not a member of the Federal Reserve System nor a national or District bank.

3. 12 U.S.C. § 1828(c)(4) provides as follows:

    In the interests of uniform standards, before acting on any application for approval of a merger transaction, the responsible agency, unless it finds that it must act immediately in order to prevent the probable failure of one of the banks involved, shall request reports on the competitive factors involved from the Attorney General and the other two banking agencies referred to in this subsection. The reports shall be furnished within thirty calendar days of the date on which they are requested, or within ten calendar days of such date if the requesting agency advises the Attorney General and the other two banking agencies that an emergency exists requiring expeditious action.

favorably[4] on the proposed merger, as did the Antitrust Division of the Department of Justice, Comptroller of Currency and Federal Reserve Board. Despite these unanimous recommendations of approval, the FDIC Board of Directors, by a vote of 2–1, disapproved the proposal on December 18, 1970. After reconsideration, the Board affirmed its denial on July 30, 1971. The Board determined that although banking factors were consistent with approval and the proposed merger would not violate the antitrust laws of the United States, the merger would be a significant precedent for approval of additional mergers in highly concentrated markets. The Board's decision to apply a competitive standard stricter than the antitrust laws was grounded on the Bank Merger Act of 1966, 12 U.S.C. § 1828(c)(5).[5]

Washington Mutual and Grays Harbor commenced an action to compel the FDIC to approve the merger and sought a declaratory judgment that the Board's action was arbitrary, capricious and not in accordance with the law. Summary judgment for the banks was granted on July 21, 1972. The district court's decision[6] was based primarily on the FDIC's failure to apply relevant factors under the antitrust laws as Congress had intended in enacting the Bank Merger Act of 1966. On remand to the FDIC, the Board confirmed that the proposed merger did not violate the antitrust laws of the United States, but refused to approve the merger, alleging discretionary power to impose stricter standards. The district court, on October 25, 1972, enjoined the FDIC from continuing to withhold its approval and this appeal ensued.

The parties raise a number of issues, only one of which we need discuss in detail: Did the district court err in holding that the FDIC does not have the discretionary power under the Bank Merger Act of 1966 to deny a merger application based on a competitive standard more stringent than the antitrust laws of the United States?

Prior to reaching this issue, a review of the history of bank mergers and the antitrust laws and the role of the FDIC is necessary.

## II. HISTORICAL BACKGROUND

a. *Pre-1960.* Although this country repeatedly suffered from unregulated and uncontrolled competition in the field of banking,[7] there was no effective regulation of bank mergers through the antitrust laws prior to 1950. The Sherman Act had been considered inapplicable to all but the most serious restraints, while the Clayton Act was a dead letter so far as bank mergers were concerned. Section 7 of the Clayton Act proscribed stock acquisitions by corporations, but bank mergers were normally accom-

---

4. The district court did not abuse its discretion in ordering production of the FDIC's "internal file" after its *in camera* inspection.

5. 12 U.S.C. § 1828(c)(5) provides as follows:

   The responsible agency shall not approve—

   (A) any proposed merger transaction which would result in a monopoly, or which would be in furtherance of any combination or conspiracy to monopolize or to attempt to monopolize the business of banking in any part of the United States, or

   (B) any other proposed merger transaction whose effect in any section of the country may be substantially to lessen competition, or to tend to create a monopoly, or which in any other manner would be in restraint of trade, unless it finds that the anticompetitive effects of the proposed transaction are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served.

   In every case, the responsible agency shall take into consideration the financial and managerial resources and future prospects of the existing and proposed institutions, and the convenience and needs of the community to be served.

6. 347 F.Supp. 790 (W.D.Wash.1972).

7. S.Rep.No.196, 86th Cong., 1st Sess. 16–18 (1959).

plished without an "acquisition" of "stock." [8] To reach undue concentrations of economic power or monopoly in their incipiency, Section 7 was amended in 1950 extending the statute's reach to any "corporation subject to the jurisdiction of the Federal Trade Commission." [9] Since banks were not subject to the Commission's jurisdiction, the prevalent view was that bank mergers had successfully eluded the grasp of the antitrust laws.[10] Congress became increasingly concerned with this problem in the 1950's.[11]

The Federal Deposit Insurance Corporation was created in 1933 to insure depositors against loss resulting from bank failures and to restore public confidence in banks.[12] The Federal Deposit Insurance Act was amended in 1950 and for the first time the FDIC was required to approve all mergers and consolidations between insured and noninsured banks.[13] But the standard for approval was a purely mechanical one without any guidance as to the significance to be attributed to the anticompetitive effects of a proposed union. The upshot of congressional concern over the increasing concentration of banking resources and the absence of standards for the bank supervisory agencies was the short-lived Bank Merger Act of 1960.[14]

b. *The Bank Merger Act of 1960.* The 1960 Act was intended to effect greater control over bank mergers by requiring pre-merger approval by one of the three federal banking agencies. Seven factors were to be balanced by the appropriate agency with no controlling effect given to any one factor.[15] There were six "banking factors": financial history and conditions of each bank, adequacy of capital structure, future earnings prospects, general character of management, convenience and needs of the community to be served, and consistency of a bank's corporate powers with the purposes of the Federal Deposit Insurance Act.[16] The seventh factor was the effect of the transaction on competition. In the interest of uniform regulation and to preserve the integrity of the dual banking system, the Attorney General and the other two banking agencies, Comptroller of Currency and Federal Reserve Board, were required to submit reports on the competitive effects of a proposed merger.[17]

Congress determined that since banks had traditionally been the subject of special regulation and a bank failure was a community disaster, the strict rule of section 7 of the Clayton Act was inappropriate.[18] An anticompetitive merger could be approved under the 1960 Act if, on balance, public interest demanded it.[19]

The 1960 Act not only failed to accomplish its purpose of curtailing the number of bank mergers,[20] but prevented uniform application by the banking agencies because of the absence of guidelines for balancing the seven factors.[21] Then, in a surprising deci-

8. Lifland, The Supreme Court, Congress, and Bank Mergers, 32 Law & Contemp. Prob. 15, 16 (1967).

9. Clayton Act, § 7, 15 U.S.C. § 18 (1964).

10. Comment, The 1966 Amendment To The Bank Merger Act, 66 Colum.L.Rev. 764, 766–67 (1966).

11. United States v. Philadelphia Nat. Bank, 374 U.S. 321, 377, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963) (Harlan, J., dissenting).

12. Randall, The FDIC: Regulatory Functions and Philosophy, 31 Law & Contemp.Prob. 696 (1966).

13. 64 Stat. 892 (1950).

14. 74 Stat. 129 (1960).

15. S.Rep., *supra* note 6, at 21, 22.

16. S.Rep., *supra* note 6 at 2, 22.

17. S.Rep., *supra* note 6, at 2; H.R.Rep. No.1416, 86th Cong., 2nd Sess. 12 (1960).

18. S.Rep., *supra* note 6, at 20.

19. S.Rep., *supra* note 6, at 20.

20. Comment, *supra* note 9, at 770.

21. Legislation, The 1966 Amendment to the Bank Merger Act: Economic Perspective and Legal Analysis, 20 Vand.L. Rev. 200, 219 (1966).

sion, the United States Supreme Court nullified the Act almost completely.[22]

c. *The Philadelphia Bank Decision.* The draftsmen of the 1960 Act had operated from the premise that Section 7 did not apply to banks. Indeed, the Sherman and Clayton Acts were left intact as Congress sought to provide administrative rather than judicial control over bank mergers.[23] *Philadelphia Bank* undermined both the provisions and the theory of the 1960 Act by holding that Section 7 did apply to bank mergers. The Court criticized the absence of a requirement to give particular weight to the competitive factor in the 1960 Act.[24] A bank merger that violated the antitrust laws could not be saved despite favorable weight attributed to banking factors.[25]

d. *The Bank Merger Act of 1966.* The 1966 Act was a direct response to the *Philadelphia Bank* decision and an attempt to reconcile the goals of the 1960 Act with the antitrust laws. The 1966 Act provides that a single set of standards for bank mergers be uniformly applied by the banking supervisory agencies, the Department of Justice and the judiciary.[26] The standards are the Sherman and Clayton Acts.[27] The exact language of the principal antitrust laws was incorporated into the 1966 Act, not by coincidence, but to draw on the seventy-five year history of their judicial construction.[28]

The Supreme Court's application of the antitrust laws to banks was thus retained, but Congress made an exception for certain bank mergers. If a proposed merger would violate Section 7, the banking factors, represented by "convenience and needs of the community to be served," are to be balanced against the competitive factor.[29] In contrast to the 1960 Act, competition is preeminent.[30] If the anticompetitive effects are outweighed by the convenience and needs of the community, the merger can be permitted.

The requirement of reports from the Attorney General and the two other banking agencies on competitive factors involved was retained to insure uniformity and avoid a particular agency's being either too lenient or too strict.

The Supreme Court has had several opportunities to construe the provisions of the 1966 Act. In United States v. Third Nat. Bank, 390 U.S. 171, 88 S.Ct. 882, 19 L.Ed.2d 1015 (1967), the Court noted that the 1966 Act was designed to make substantial changes in bank merger law. Regarding the application of the 1966 Act, the Court stated:

> We find in the 1966 Act, which adopted precisely that § 7 Clayton Act phrase [substantially to lessen competition] as well as the 'restraint of trade' language of Sherman Act § 1, no intention to adopt an 'antitrust standard' for bank cases different from that used generally in the law. Only one conclusion can be drawn from the exhaustive legislative deliberations that preceded passage of the Act: Congress intended bank mergers

22. United States v. Philadelphia Nat. Bank, 374 U.S. 321 (1963).

23. H.R.Rep., *supra* note 16, at 9.

24. Philadelphia Nat. Bank at 351–52.

25. Philadelphia Nat. Bank at 371.

26. H.R.Rep.No.1221, 89th Cong., 2nd Sess. 1, U.S.Code & Admin.News 1966, p. 1860; 112 Cong.Rec. 2440 (1966) (Remarks of Congressman Smith).

27. 112 Cong.Rec. 2441 (1966) (Remarks of Congressman Patman); Comment, Bank Mergers: A New Standard of Evaluation?, 46 Texas L.Rev. 81, 85 (1967); Edwards, Bank Mergers And The Public Interest: A Legal and Economic Analysis of The 1966 Bank Merger Act, 85 Banking L.J. 753, 756 (1966).

28. 112 Cong.Rec. 2444 (1966) (Remarks of Congressman Reuss); 20 Vand.L.Rev., *supra* note 20, at 223.

29. H.R.Rep., *supra* note 25, at 5; 112 Cong.Rec. 2444 (1966) (Remarks of Congressman Reuss).

30. 112 Cong.Rec. 2441 (1966) (Remarks of Congressman Patman); 112 Cong. Rec. 2444 (1966) (Remarks of Congressman Reuss).

first to be subject to the usual antitrust analysis; if a merger failed that scrutiny, it was to be permissible only if the merging banks could establish that the merger's benefits to the community would outweigh its anticompetitive disadvantages. (at 181–182, 88 S.Ct. at 889).

Although there has been vigorous disagreement on the Court as to whether a particular bank merger violates the antitrust laws, the Justices have been unanimous that Congress intended the two-pronged approach enunciated in *Third National* Bank. United States v. Phillipsburg National Bank, 399 U.S. 350, 353, 90 S.Ct. 2035, 26 L.Ed.2d 658 (1970). *See also Phillipsburg* at 374, 90 S.Ct. 2035 (Harlan, J., dissenting).

## III.  ANALYSIS.

The scope of our review in this case is limited. There is no dispute that the FDIC acted within the scope of its authority. Therefore, we must determine whether the FDIC's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Citizens To Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

The FDIC offers a number of arguments in support of its claims of discretionary power to deny a merger application on the basis of alleged anticompetitive effects which do not violate the antitrust laws of the United States. The FDIC argues: (1) the Bank Merger Act of 1966 did not replace the 1960 Act and thereby divest the banking agencies of any discretion they had under the 1960 Act; (2) the 1966 Act cannot be interpreted so as to make the antitrust laws the sole competitive standards; and (3)

the 1966 Act authorizes the banking agencies to consider the convenience and needs of the community in every case, that concept including anticompetitive effects which do not violate the antitrust laws. In light of legislative history and Supreme Court decisions, we disagree.

■ The principal aim of the 1966 Act was to curtail the discretion of the banking agencies. There had been significant variances in the application by the agencies of the seven factors in the 1960 Act and agency-shopping was feared. Congress sought the uniform application of a single set of standards by both agencies and the courts. Reports from the Attorney General and the two other banking agencies on the competitive factors involved in a merger were to insure uniformity. Acceptance of the FDIC position would make uniformity fortuitous and though it is a possible interpretation of the 1960 Act, would directly contravene the thrust of the 1966 Act.

■ Legislative history and subsequent Supreme Court interpretation of the 1966 Act indicate that all bank merger applications are first to be subjected to traditional antitrust analysis. If a violation of either the Sherman or Clayton Act is discerned, a balancing of banking factors and anticompetitive effects is made. Congress specified that the antitrust laws be the sole competitive standard not only to insure uniformity, but also to afford the banking agencies a discernible body of law upon which to base their decisions. The FDIC's contention that a competitive standard more stringent than the antitrust laws can be applied is not acceptable.[31] While it is true that the

---

31. Contrary to the contention of the FDIC, there has been disagreement among the bank supervisory agencies as to the proper application of the Bank Merger Act of 1966. In United States v. First National Bancorporation, 410 U.S. 577, 93 S.Ct. 1434, 35 L.Ed.2d 507 (1973), Northwest Bancorporation, —— Fed.Res.Bull. —— (Feb. 26, 1973) and

First Florida Bancorporation, —— Fed. Res.Bull. —— (February 16, 1973), the Federal Reserve Board evaluated the proposed bank mergers in terms of the Sherman and Clayton Acts. In United States v. Marine Bancorporation, Civil No. 237–7102 (W.D.Wash. January 31, 1973), the Comptroller of Currency applied a standard based on the antitrust

1966 Act specifies a stricter competitive standard than the 1960 Act, the overall effect of the 1966 Act is to afford banks special treatment, less rigorous than the dictates of the antitrust laws, by allowing bank mergers where anticompetitive factors are outweighed by banking factors.

Convenience and needs of the community has traditionally been regarded as a banking factor. Congress lifted the term out of prior regulatory legislation for the 1960 Act.[32] By 1966, Congress regarded the traditional banking factors as archaic and substituted "convenience and needs of the community" for all of them in the 1966 Act. Certainly in the broadest sense, the convenience and needs of the community concerns competition.[33] But the history of the bank merger provisions indicates that banking factors and anticompetitive effects are to be separated and balanced against each other.

The final paragraph of § 1828(c)(5) recognizes that the FDIC retains its traditional role of evaluating banking factors. All bank supervisory agencies can reject merger applications if the banking factors are unfavorable whether or not a potential antitrust violation is present. In the case before us the FDIC found the banking factors favorable and improperly rejected the merger on the basis of alleged anticompetitive effects.

The FDIC does not have the power under the Bank Merger Act of 1966 to deny a merger application on the basis of a competitive standard more stringent than the antitrust laws of the United States. The decision of the district court is affirmed.

laws while the FDIC, Federal Reserve Board and Antitrust Division of the Department of Justice advocated a standard more stringent than the antitrust laws. Therefore, not only is there interagency conflict but inconsistent treatment administered by the individual agencies.

32. Comment, *supra* note 9, at 769.

33. The FDIC can draw some support for its position in several law reviews. Comment, *supra* note 9, at 784–85; 20 Vand. L.Rev., *supra* note 20, at 226–27.