**FIRST MIDLAND BANK AND TRUST COMPANY, a Michigan Banking Corporation, Plaintiff,**

v.

**CHEMICAL FINANCIAL CORPORATION, a Michigan Corporation, CFC Bank, a Michigan Banking Corporation, Gladwin County Bank, a Michigan Banking Corporation, Citizens Bank and Trust Company, a Michigan Banking Corporation, and Chemical Bank & Trust Company, a Michigan Banking Corporation, Defendants.**

Civ. A. No. 77–231.

United States District Court, W. D. Michigan.

May 27, 1977.

Supplemental Opinion June 10, 1977.

Order June 17, 1977.

Thomas J. Heiden, Grand Rapids, Mich., for plaintiff.

Curtis W. Poole, Jr., Fred L. Woodworth and Ronald S. Holliday, Detroit, Mich., James S. Bicknell, III, Clare, Mich., for defendants.

## OPINION

MILES, District Judge.

Upon the filing of this suit alleging violations of the antitrust laws, an automatic stay of Federal Reserve approval of the proposed merger between defendants Gladwin County Bank and CFC Bank became effective under 12 U.S.C. § 1828(c)(7)(A). Defendants have now moved to set this automatic stay aside, as the Court is authorized to do under section 1828(c)(7)(A). At the outset the Court observes that this is not a proceeding for a preliminary injunction under Federal Rule of Civil Procedure 65. The issues confronting the Court are not those raised by a motion for a prelimi-

nary injunction, namely, irreparable harm, balancing of injuries, probability of success on the merits, and the public interest. The Court is persuaded that the issues raised by defendants' motion to lift the automatic stay are *much narrower.*

In *United States v. First City National Bank of Houston,* 386 U.S. 361, 370, 87 S.Ct. 1088, 1094, 18 L.Ed.2d 151 (1967), the Supreme Court stated:

"As we have seen, the 1966 Act provides that a timely antitrust action 'shall stay the effectiveness of the agency's approval unless the court shall otherwise specifically order.' 12 U.S.C. § 1828(c)(7)(A). . . . A stay of course is not mandatory under any and all circumstances. But absent a frivolous complaint by the United States . . . a stay is essential until judicial remedies have been exhausted."

One issue raised in this proceeding therefore is whether the complaint is "frivolous." The Court does not read *First City National* to limit the grounds for lifting the stay to a frivolous complaint. The purpose for the automatic stay provisions contained in both the Bank Merger Act of 1966 and the Bank Holding Company Act of 1956 is abundantly clear from the legislative history. In fact, the Court noted in *First City National* that:

"The legislative history is replete with references to the difficulty of unscrambling two or more banks *after* their merger. The normal procedure therefore should be maintenance of the *status quo* until the anti-trust litigation has run its course, lest consummation take place and the unscrambling process that Congress abhorred *in the case of banks* be necessary." 386 U.S. at 370–71, 87 S.Ct. at 1094–95 (footnote omitted) (emphasis by the Court).

The provision for an automatic stay is identical in both the Bank Holding Company Act and the Bank Merger Act, and courts have construed the acts in pari materia. The Court is therefore persuaded that the issues presently before it are (1) whether the complaint is "frivolous" or (2) whether

the problem of unscrambling assets, the reason for the automatic stay, is present. Establishment of either of these two elements would in the opinion of the Court be sufficient to warrant a lifting of the stay.

Defendants assert that plaintiff lacks standing to invoke the automatic stay provisions. The legislative history of the stay provisions is replete with references to an antitrust suit filed by the Department of Justice giving rise to the automatic stay. In addition, the cases discussing the automatic stay consider only the effect of a suit filed by the government. Defendants argue that these factors establish that the automatic stay does not operate in favor of a private antitrust litigant. Indeed, the Court has not been able to locate a reported case in which a private antitrust suit has invoked the automatic stay. Against these circumstances, however, must be balanced the language of the statute itself, which provides that "[a]ny action" stays the effectiveness of agency approval. This language raises a legal issue. The Court is of the opinion, however, that resolution of this issue is not essential to proper disposition of this motion.

The Court finds that CFC Bank is a so-called "phantom bank" with no assets or other property except that initial capital contribution required under the Michigan banking laws. As a result, the merger of Gladwin and CFC would not involve a commingling of assets. Judge Gubow, U.S. District Judge for the Eastern District of Michigan has had occasion to consider application of the automatic stay provisions to mergers to be consummated by a "phantom bank." In *United States v. Michigan National Corp.,* Civ.No.74–71882 (E.D.Mich., Dec. 6, 1974), Judge Gubow stated:

"Thus, while the Court in the *Houston* case did state a rule favorable to the position of the government (namely that the stay should remain unless the complaint is frivolous), it did so on a rationale emphasized by the defendants (namely that Congress enacted the stay provision for the purpose of preventing the difficulty of 'unscrambling' banks after a

merger). That rationale provides comfort for the Defendants because the mergers at issue here are between the banks sought to be acquired by the MICHIGAN NATIONAL CORPORATION (MNC) and 'phantom' banks chartered by MNC. Because the phantom banks hold no assets or deposits, the postmerger difficulty of unscrambling is significantly less severe than the problem which concerned the Court in the *Houston* case. There, the banks to be merged each had assets and deposits.

The factual distinction between this case and the *Houston* case persuades this court that the rule enunciated therein should not control here." *Id.* at 3.

The fact that CFC is a "phantom bank," however, does not obviate the unscrambling problem. Some of the divestiture problems in a bank merger or bank holding company acquisition were addressed in *United States v. United Banks of Colorado, Inc.,* 1971 Trade Cases ¶ 73,421, at 89,714 n. 1 (D.Colo. 1970), where the court observed:

"For example, there are questions of whether an acquired bank could or should be returned to its former shareholders, or spun off to the holding company's shareholders, or sold to third parties. Moreover, the law limits the number of available purchasers for banks and often requires that particular bank divestiture arrangements secure a variety of regulatory approvals. Divestiture also involves commercial problems—such as whether the acquiror should be permitted to reject offers which are lower than the price it had paid for the bank upon consummation. Finally, impending divestiture makes it more difficult to sustain public confidence in and management of these unique institutions."

The Court agrees with the statements of *United Banks of Colorado* that maintenance of the banks as separate entities and agreeing to cooperate fully in the event divestiture is mandated will not warrant lifting the stay. The Colorado court observed further:

"Despite the generosity of defendants' stipulation, [to hold separate and to cooperate fully in divestiture] however, the Court is of the opinion that the basic problem would remain: While the stay is in effect, the smaller banks would remain as viable, independent institutions. If, however, the stay if lifted, the mergers or acquisitions consummated and divestiture is subsequently ordered, it would become necessary to find or create an operating entity to take over the previously merged or acquired assets, and the Court believes the search for purchasers or investors would be a seriously difficult, and probably protracted, undertaking."

Judge Gubow recognized the divestiture problems inherent even in a "phantom bank" situation, but noted:

"[t]he principal Defendants and THE COMPTROLLER OF THE CURRENCY have adopted and submitted a detailed plan for divestiture in the event the government prevails on the merits. That plan, which shall be entered as an order of this court, affords full protection against the evils which the statutory stay might prevent. Under such circumstances, the authority of a district court to lift the statutory stay has been judicially recognized. *United States v. United Virginia Bankshares, Inc.,* 1971 Trade Cases, CCH ¶ 73, 456 (E.D.Va.1971)." Opinion at 3–4.

Defendants have submitted a proposed "hold separate" order detailing the manner in which divestiture is to be accomplished in the event First Midland prevails. The proposed order duplicates the divestiture provisions approved in an order entered by Judge Gubow in another automatic stay case, attached to defendants' memorandum. Among the contingencies set forth in the divestiture plan submitted by defendants are preferential rights to former shareholders of Gladwin. Plaintiff has alleged in its complaint, however, that these owners are officers and directors of Chemical Financial and Chemical Bank, or their immediate families, and attacks this ownership under the antitrust laws. In the event plaintiff should prevail on these claims, the preferential rights of purchase could not be included in a divestiture program. Although the proposed order does allow the Court to order any other appropriate manner of divestiture, the Court is concerned that should plaintiff prevail on its claims the Court would be forced to fashion a divestiture program with all the problems noted in *United Banks of Colorado.* As a result, the Court believes that in order to render divestiture manageable, thus obviating the rationale behind the automatic stay provisions, defendants should specify the course of action to be taken in the event resolution of this case makes preferential rights of purchase impossible.

Plaintiff has contended that while Judge Gubow's reasoning in regard to phantom banks may be appropriate in a bank merger case, it is inapplicable to a bank holding company acquisition case. In holding company acquisitions, there will not be the problems of unscrambling assets, since the holding company does not generally have assets, that can be commingled with those of the bank acquired. Plaintiff rightfully notes that an automatic stay is also imposed in the case of a bank holding company acquisition under 12 U.S.C. § 1849(b). We have here a transaction that is both a bank merger and a bank holding company acquisition. Nevertheless, the Court is convinced that the reasoning is the same for both types of transactions. The legislative history indicates that Congress believed that the automatic stay provisions should be the same for mergers and holding company acquisitions and that the provisions applicable to both kinds of transactions should be construed in pari materia. Although there may be no unscrambling problem in the case of a bank holding company acquisition, there are still the potential problems of divestiture noted in *United Banks of Colorado.* If these divestiture problems can be eliminated to a great extent by a proposed agenda of divestiture incorporated into a court order, the need for the automatic stay no longer exists.

Plaintiff has cited other considerations making continuation of the stay particularly appropriate, including avoiding financial dependency, liquid asset drain, dependency for management, dependency on services, and the adverse interim effect on banking business. These factors, however, relate more properly to the question whether a preliminary injunction is appropriate. The Court recognizes that plaintiff has of course relied upon the automatic stay in refraining from filing a motion for a preliminary injunction, and is concerned that consummation of the merger may jeopardize plaintiff's case for a preliminary injunction. As a result, in the interim between submission of an order lifting the automatic stay and a hearing on plaintiff's motion for a preliminary injunction, defendants will merge at their peril. In deciding any motion for a preliminary injunction the Court will consider the status quo as of the time the automatic stay is lifted, and in the event plaintiff should establish a right to preliminary injunctive relief, the merger may be set aside.

## SUPPLEMENTAL OPINION

### I. INTRODUCTION

Plaintiffs have filed this suit alleging violations of various provisions of the antitrust laws. Plaintiff is a Michigan banking corporation with main office and branches in Midland County, Michigan. Defendant Chemical Financial is a bank holding company with the following subsidiary banks located throughout the state of Michigan: Chemical Bank & Trust, with offices in Midland and other counties; Bank of Albion, located in Albion, Michigan; Au Gres Bank, located in Au Gres, Michigan; and CFC Bank, organized for the sole purpose of merging with or acquiring the Gladwin County Bank. Plaintiff alleges that defendant Chemical Financial directly or indirectly owns a controlling interest in the Gladwin County Bank in Beaverton, Michigan and in Citizens Bank and Trust, located in Clare, Michigan. In addition, plaintiff alleges that Chemical Financial controls a significant number of shares in the Farwell

State Savings Bank, located in Farwell, Michigan.

CFC Bank was formed by Chemical Financial for the sole purpose of acquiring and/or merging with the Gladwin County Bank. CFC Bank is a so-called "phantom bank," with no assets or properties other than that initial capital contributions required by the Michigan banking laws. In order to consummate the merger it was necessary to obtain the approval of (1) the Commissioner of the Michigan Financial Institutions Bureau (FIB) (under M.C.L.A. § 487.425; M.S.A. § 23.710(125); (2) the Federal Deposit Insurance Corporation (FDIC) (under the Bank Merger Act of 1966, 12 U.S.C. § 1828(c)(1)(A)), and (3) The Board of Governors of the Federal Reserve System (Fed) (under the Bank Holding Company Act of 1956, 12 U.S.C. § 1842). In addition, under both the Bank Merger Act of 1966, 12 U.S.C. § 1828(c)(6), and the Bank Holding Company Act of 1956, 12 U.S.C. § 1849(b), the Attorney General was given notice of regulatory approval to determine whether an antitrust suit was warranted.

The Bank Merger Act, 12 U.S.C. § 1828(c)(7)(A) requires any antitrust action arising out of a merger transaction to be commenced within thirty days of FDIC approval. That period expired December 23, 1976. The Bank Holding Company Act, 12 U.S.C. § 1849(b) requires any antitrust action arising out of an acquisition transaction to be brought within thirty days of Fed approval. Plaintiff filed this suit on May 12, 1977, twenty eight days after Fed approval. The Bank Holding Company Act § 11(b), 12 U.S.C. § 1849(b) provides that the commencement of an antitrust action "shall stay the effectiveness of the Board's approval unless the court shall otherwise specifically order." Accordingly, notice of the statutory stay was filed May 12. Defendants have now moved for a lifting of the statutory stay, urging that plaintiff had no standing to invoke the stay and that, in any event, the stay is no longer appropriate.

### II. LEGISLATIVE HISTORY

Proper assessment of defendants' motion requires careful consideration of the

background of the statutory stay provisions in the Bank Merger Act and the Bank Holding Company Act. The Bank Merger Act, as first enacted in 1960, was designed to reconcile competing public interests in the field of banking. In that Act Congress sought to permit mergers with substantial uncompetitive effects if, on balance, the convenience and needs of the community demanded it. S. Rep. No. 196, 86th Cong., 1st Sess. 20 (1959); *see also Washington Mutual Savings Bank v FDIC*, 482 F.2d 459, 461–62 (9th Cir. 1973). In drafting the 1960 Bank Merger Act Congress assumed that section 7 of the Clayton Act was inapplicable to bank mergers, because the industry was traditionally subject to special regulation and because a bank failure presented a community disaster. See S.Rep.No. 196, supra, at 20. In *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963), the Supreme Court destroyed this assumption, holding that section 7 was applicable to bank mergers. The Bank Merger Act of 1966 was a direct response to the *Philadelphia Bank* decision. That Act retained applicability of the antitrust laws to bank merger transactions, but qualified antitrust liability. If a proposed merger has anticompetitive effects in violation of the antitrust laws, the banking agencies and the courts are directed to weigh these anticompetitive effects against the convenience and needs of the community. See 12 U.S.C. §§ 1828(c)(5)(B) and (7)(B). Thus the Bank Merger Act of 1966 represents a congressional attempt to insulate the banking industry from full antitrust liability.

█ In 1966, Section 11 of the Bank Holding Company Act, 12 U.S.C. § 1849, was amended to conform to the provisions of the Bank Merger Act of 1966. See S. Rep. No. 1179, 89th Cong., 2d Sess., 1966 U. S. Code Cong. & Admin. News p. 2394 (1966). The Senate Report stated:

> "The Congress recently amended the Bank Merger Act to eliminate conflicts between that act and the antitrust laws that might otherwise require the unscrambling of a merger, under the anti-

trust laws, that had been approved under the Bank Merger Act. The bill would apply to bank holding company cases the same procedures as are now provided for this purpose in bank merger cases, in addition to establishing uniform standards." *Id.*

The antitrust provisions in both the Bank Holding Company Act and the Bank Merger Act are consequently to be construed in pari materia.

Both Acts provide for rather extensive administrative consideration of the anticompetitive aspects of the proposed merger or acquisition. In addition, both Acts provide for participation and/or comments by the Attorney General in the process of assessing competitive effects. Finally, it must be recognized that in the area of banking, antitrust issues require a high degree of expertise, not only because of the specialized and relatively technical nature of the banking industry, but because proper assessment, in accordance with the standards laid out by Congress, mandates a careful balancing of the often conflicting factors of anticompetitive effect and furtherance of the convenience and needs of the community.

## III. STANDING

Defendants argue that a private plaintiff lacks "standing" to trigger the automatic stay provisions of the Bank Merger Act and Bank Holding Company Act. Plaintiff, however, relies on the language of the acts, which provides that "[a]ny action" brought under the antitrust laws stays the effectiveness of agency approval.

█ The "plain meaning" of the statutory language does, of course, result in the interpretation urged by plaintiff. The ramifications of such an interpretation are, however, enormous. Under such a reading any "man on the street" can stay a pending bank merger or acquisition simply by filing a suit under the antitrust laws. In reading the statutes the Court must recognize that the antitrust provisions were enacted to partially insulate the banking industry from antitrust claims to facilitate bank mergers

and acquisitions. This purpose is diametrically opposed to the results of the "man on the street" reading urged by plaintiff.

In fact, Congress recognized the enormous power to bring the banking industry to a virtual standstill implicit in the automatic stay provisions. Congress attempted to circumscribe the exercise of that power, and Chairman Robertson of the Senate Banking and Currency Committee stated:

"The critics felt that this provision [for an automatic stay] gave the Justice Department an absolute veto over bank mergers. All the Department would have to do would be to file a mimeographed complaint attacking a merger, and the banks would abandon the merger, partly because the 2- or 3-year delay in consummating the merger would make any agreement entered into outdated by the time the merger could be effective, assuming the case was eventually won. The Banking and Currency Committee recognized this problem, and in our report on the bill we warned the Department of Justice to exercise this power with restraint." 112 Cong.Rec. 2542 (daily ed. Feb. 9, 1966).

These "warnings" to the Justice Department are inconsistent with the interpretation urged by plaintiff. The legislative history further supports the proposition that the automatic stay was not intended to work in favor of a private plaintiff.

The Report of the Senate Committee on Banking and Currency, S.Rep.No. 299, 89th Cong., 1st Sess. 1 (1965) declared:

"The bill would require that future bank mergers should not be consummated until 30 days after the date of approval by the appropriate banking agency under the Bank Merger Act. If the Justice Department did not institute a suit under the antitrust laws during this 30-day period the merger could be consummated and would thereafter be exempt from the Sherman Act and the Clayton Act." (emphasis added).

The Report of the House Committee on Banking and Currency, H. R. Rep. No. 1179, 89th Cong., 1st Sess. 10 (1965) stated:

"In all except emergency situations, a 30-day waiting period is provided after agency approval of a merger to give *the Attorney General* an opportunity to challenge it in court." (emphasis added).

■ The purpose of the Bank Merger Act of 1966 and the 1966 amendment to the Bank Holding Company Act, the congressional debates, the House Report, and Senate Report leave little doubt that the automatic stay was intended to operate only in favor of the Attorney General, and is not triggered by the filing of an antitrust suit by a competitor. One district court has apparently reached the same conclusion. In *Blount v. State Bank & Trust Co.*, Civ. Act. No. 695 (E.D.N.C.) a private party brought suit under the antitrust laws and sought to invoke the automatic stay. The Comptroller of the Currency argued against the stay, urging that a private action could not automatically stay agency approval. The court agreed, and entered an ex parte order lifting the stay and subsequently a post-hearing order permanently lifting the stay. Civ. Act. No. 695 (filed Sept. 19, 1969); Civ. Act. No. 695 (filed Sept. 30, 1969). The Court has found no reported cases in which a private plaintiff invoked the automatic stay.

■ Defendant argues that this interpretation is contrary to the long-established policy of favoring the private antitrust action. A decision that a private lawsuit does not invoke the automatic stay, however, does not foreclose a private action; it merely means that such an action is not conducted under shelter of an automatic stay. In addition, competitors and other interested persons are giving notice of pending merger applications and are afforded an opportunity to participate in the form of comments or, if the Board so directs, at a hearing. Anticompetitive impacts are important factors considered before the Board. Plaintiff, however, contends that the task of litigating an antitrust suit against a relatively large bank, without benefit of the automatic stay, would "crush" most smaller competitors. Lifting the automatic stay, however, does not mean that plaintiff cannot thereafter

seek preliminary injunctive relief. As circumstances change, the anticompetitive impact of the proposed merger or acquisition may become more apparent, and the resulting injury to competitors may warrant judicial intervention. Certainly, should the impact of the merger be such as to threaten plaintiff's ability to continue to maintain the suit, this Court, provided the other requirements for injunctive relief were met, would not hesitate to order divestiture pending the outcome of litigation.

■ For these reasons, the Court concludes that plaintiff is without standing to invoke the automatic stay provisions of the Bank Merger and Bank Holding Company Acts.

## IV. PRIOR ADMINISTRATIVE DETERMINATIONS

The anticompetitive effects of the proposed transaction have been subjected to extraordinary scrutiny by a number of governmental agencies. At the time CFC Bank was formed, it had to secure the approval of the Commissioner of the Michigan Financial Institutions Bureau. The Commissioner assesses the transaction's impact on local banking, and may, if he finds it in the best interests of the banking community, withhold approval. The Federal Deposit Insurance Corporation next considered the transaction, focusing, inter alia, on "the competitive factors involved." In its consideration, the FDIC solicited reports on competitive factors from the Justice Department, the Board of Governors of the Federal Reserve System, and the Comptroller of the Currency. In approving the application the FDIC found that the merger "will not per se, change the competitive structure of commercial banking in the relevant market area." The Federal Reserve Board also was required to consider "anticompetitive effects." 12 U.S.C. § 1842(c)(2). The Board notified the FIB of

the application to permit that agency to submit its views on the proposed transaction. The Board concluded that the effect on existing competition "would not be substantial." Both the Board and the FDIC gave the Justice Department notice of their approval to afford that agency an opportunity to challenge the determinations through an antitrust suit. The anticompetitive effects of the proposed merger have been considered once by the FDIC, once by the Comptroller of the Currency, twice by the Federal Reserve Board, and three times by the Department of Justice. None of these agencies found the anticompetitive effects alleged by plaintiff.

Judicial consideration in an antitrust action challenging a bank merger or holding company acquisition is to be "de novo." Bank Merger Act, 12 U.S.C. § 1828(c)(7)(A); Bank Holding Company Act, 12 U.S.C. § 1849(b). Plaintiff contends that these administrative determinations are to be given no weight, citing *United States v. First City National Bank of Houston*, 386 U.S. 361, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967). There, the Court stated that in antitrust actions involving regulated industries, "the courts have never given presumptive weight to a prior agency decision[s]." 386 U.S. at 367, 87 S.Ct. at 1092. The Court also stated that "the court should make an independent determination of the issues," *id.* at 368, 87 S.Ct. at 1093, and quoted Congressman Patman's statement that the "court is not to give any special weight to the determination of the bank supervisory agency." [1] *Id., quoting* 112 Cong.Rec. 2335 (Feb. 8, 1966). The Court, however, qualified these assertions, stating that courts may find the agency's reasons "persuasive or well nigh conclusive." *Id.* at 369, 87 S.Ct. 1088.

Although agency determinations are not to be accorded "presumptive weight," the Supreme Court has sanctioned reliance on

---

[1]. Congressman Patman's remarks deal only with banking agency determinations. The determination of the Justice Department not to commence a suit is not included in Patman's comments. Certainly, the determination of Justice an agency adept in dealing with antitrust matters is worthy of some weight. Pat-

man's failure to mention Justice Department consideration, moreover, is probably indicative of the congressional belief that Justice's determination would be conclusive, i. e. that there is no private antitrust right of action against a bank merger or acquisition.

agency determinations concerning antitrust aspects of bank mergers. In *United States v. Philadelphia National Bank,* 374 U.S. 321, 361, 83 S.Ct. 1715, 1740, 10 L.Ed.2d 915 (1962), a pre-*Houston* case, the Court stated in regard to its determination of the relevant geographic market:

"We are helped to this conclusion by the fact that the three federal banking agencies regard the area . . . as an 'area of effective competition.'"

In *United States v. Phillipsburg National Bank,* 399 U.S. 350, 364, 90 S.Ct. 2035, 26 L.Ed.2d 658 (1970), a post-*Houston* case, the Court reiterated its reliance on agency determination of the relevant geographic market.

It is apparent that the scope of the geographic market is the key issue in this case. Plaintiff contends that the relevant geographic market is Midland, Gladwin, and Clare Counties, and the northern portion of Isabella County. The Federal Reserve Board, however, found the relevant banking market to be Bay, Midland, and Gladwin Counties, and the northern three quarters of Saginaw County. The Board found that there had been a change in the market since 1971, when it disapproved virtually the same transaction, stating:

"On January 28, 1971, the Board denied a proposed merger between Applicant's lead bank and Bank on competitive grounds (57 Fed.Res.Bull. 128 (1971)). In 1970 Applicant's lead bank and Bank ranked first and fourth, respectively, among five banks in a market that was approximated by the southern one-half of Gladwin County and the northern and central portion of Midland County. However, commuting, bank branching, growth, and advertising media data indicate that competitive conditions have changed so that the 1970 market has become integrated into a larger metropolitan area that includes Bay and most of Saginaw Counties."

In *United States v. Manufacturer's Hanover Trust Co.,* 240 F.Supp. 867, 880–84 (S.D.N.Y.1965), the court found determination of the relevant banking market particularly appropriate for the application of agency expertise, characterizing the issue as involving "a multitude of technical intricate, and complex problems." *See also Philadelphia National Bank,* supra; *Phillipsburg National Bank,* supra.

For the purposes of this action, the Court is constrained to agree with the Fed's findings. Plaintiff has stated that it did not participate in FDIC or Fed proceedings because it was relying on the earlier determination that anticompetitive effects barred the merger, and hence on the earlier definition of "relevant market." Neither the plaintiff nor this court should assume that conditions in the area affected remain static for the greater part of the past decade. The Fed's findings, as presented by defendants, are simply not balanced by any countervailing evidence presented by plaintiff. Plaintiff has failed to deal with this allegation of change in market area, and the Court therefore accepts the agency's definition.

■ Under the evidence presently before the Court, there is substantial doubt whether plaintiff will prevail on the merits in its claim of the relevant geographic market. In *United States v. First National Bank of Hawaii,* 257 F.Supp. 591, 597 (D.Haw.1966), the court found absence of probability of success on the merits to warrant lifting of the statutory stay. Similarly, the Court here finds that the facts surrounding plaintiff's definition of the relevant geographic market warrant lifting the statutory stay.

## V. UNSCRAMBLING

■ In its earlier opinion the Court relied heavily on "unscrambling" rationale adopted by Judge Gubow in two similar cases in the Eastern District of Michigan. The Court has had an opportunity to reflect upon its prior opinion with benefit of the arguments offered by plaintiff. Plaintiff contends that the proposed hold separate order is inadequate for several reasons. First, plaintiff asserts that the situation in the *Michigan National* cases decided by Judge Gubow was far different from the situation now confronting the Court. The *Michigan National* cases included the Comptroller of the Currency as an intervenor, and the Comptroller participated in the

drawing up and would supervise the implementation of the hold separate order in the event divestiture was required. Plaintiff also contends that in the *Michigan National* cases there was nearly two years for discovery, permitting a more intelligent assessment of factors considered in determining whether to lift the stay. As the proposed order is now drawn, participation by the Comptroller of the Currency appears unnecessary. The proposed order substantially parallels that drawn up by the Comptroller in *Michigan National* and his assistance in this aspect is therefore not required. In addition, under the terms of the proposed order, divestiture will not require regulatory approval, nor do the problems of divestiture appear to be of such magnitude as to render court administration impracticable. In addition, lack of discovery is not sufficient to prevent lifting the stay. The parties have convinced the Court that there is a need for immediate judicial determination. While more information and more discovery is always valuable, the need for information must be balanced against the time required to obtain it. On the basis of the facts now before the Court, the proposed hold separate order appears adequate to render unscrambling practicable. If circumstances change, or if newly discovered evidence indicates that a lifting of the stay is no longer appropriate, plaintiff may return to the Court and request a preliminary injunction or, if harm is too imminent to permit a hearing, a temporary restraining order. Unswerving vigilance on the part of plaintiff, coupled with zealous discovery, should assure that any misconception of fact now confronting the Court will soon be remedied.

Plaintiff additionally asserts that the proposed merger will weaken the Gladwin County Bank by resulting in a drain of Gladwin's assets and dependence upon Chemical Financial. Although most of plaintiff's assertions appear to be without merit, the Court is concerned about such contingencies. Plaintiff has offered a proposed order guarding against these problems, and the Court will consider the provisions and incorporate them into the hold separate order where appropriate.

For the reasons stated in the prior opinion, the Court concludes that in the event plaintiff should prevail on the merits, divestiture and unscrambling of assets will not prove overly difficult.

## VI. CONCLUSION

The Court has considered the briefs and oral arguments of both parties. For the reasons stated herein and in the earlier opinion, the Court concludes that the automatic stay provided by the Bank Holding Company and the Bank Merger Acts must be lifted to permit the merger of CFC Bank with the Gladwin County Bank. The Court will issue an appropriate hold separate order.

## ORDER

Upon motion of Defendants, and the Court having had the benefit of briefs and oral argument from the counsel for the respective parties herein, and being otherwise fully advised in the premises and of the opinion that the motion should be granted;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The statutory stay imposed by 12 U.S.C. § 1849(b) of the proposed merger of CFC Bank into Gladwin County Bank is hereby lifted, thereby permitting consummation of the proposed said bank merger and the acquisition by defendant Chemical Financial Corporation of the voting stock of Gladwin County Bank as a result of said merger.

2. Upon consummation of the proposed merger and pending disposition of this action, Chemical Financial Corporation will not, with respect to such merged bank, without prior approval of the Court:

(a) merge Gladwin County Bank with any other bank or sell its stock or assets;

(b) cause Gladwin County Bank to distribute its assets or declare dividends in cash or in kind, except that it may repay the $120,000 of capital initially contributed by Chemical Financial Corporation to CFC

Bank, and except that it may in any twelve month period declare dividends in an amount equal to the sum of (i) 50 percent of said bank's net income (after taxes, security gains or losses and all extraordinary items) for the preceding twelve month period, plus (ii) 12 percent per year of any additional capital contributed to or invested in said bank by Chemical Financial Corporation; and

(c) deal with Gladwin County Bank so as to affect adversely and materially its value and attractiveness in the event of divestiture.

3. If a final judgment in favor of plaintiff with respect to its claims alleged in Count I of the Complaint, as originally filed, is entered by this Court and is not set aside or reversed by an appellate court:

(a) Chemical Financial Corporation will promptly offer to sell to the public all shares of such merged bank which it then owns; or

(b) if, for any reason such offer of sale does not result in complete divestiture, Chemical Financial Corporation will distribute all of its then remaining shares as a dividend to shareholders of Chemical Financial Corporation; or

(c) Chemical Financial Corporation will divest its ownership of the Gladwin County Bank by such other method of divestiture as the Court deems appropriate.

4. Defendants may consummate the merger and acquisition at their peril pending an evidentiary hearing as to whether the statutory stay shall be lifted for the duration of this litigation.

5. If divestiture occurs under paragraph 3(b) above, Chemical Financial Corporation will be entitled to require the Gladwin County Bank to repay all capital contributed by Chemical Financial Corporation, provided that if immediate repayment would, in the judgment of both state and federal bank regulatory officials, adversely affect the financial condition of the said merged bank, arrangements will be made for repayment of such capital on a deferred basis.

6. In entering this order, this Court, pursuant to 28 U.S.C. § 1292(b), finds that whether the statutory stay imposed by 12 U.S.C. § 1828 and/or 12 U.S.C. § 1849 should be terminated on the record presented to the Court is a controlling question of law and that, based upon the record herein there are substantial grounds for difference of opinion as to the proper determination thereof. The Court further finds that prompt resolution of this question may materially advance the ultimate termination of this litigation.

7. The terms and provisions of this order shall be stayed through June 22, 1977 pending appeal of the order by either party to the Court of Appeals.