**UNITED STATES of America,**
**Plaintiff,**

v.

**FIRST NATIONAL BANK OF HAWAII**
**and Cooke Trust Company, Limited,**
**Defendants.**

**Civ. A. No. 2540.**

United States District Court
D. Hawaii.

July 14, 1966.

States of America, 12 U.S.C. § 21 et seq., under National Banking Association Charter No. 5550, is located in the State of Hawaii, and has its head office in the City and County of Honolulu, in the State of Hawaii.

Herman T. F. Lum, U. S. Atty., Hawaii, Herbert G. Schoepke, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff.

Joseph J. O'Malley, Washington, D. C., for James J. Saxon, Comptroller of the Currency.

Smith, Wild, Beebe & Cades, C. Frederick Schutte, Robert B. Bunn, Gilbert E. Cox, William M. Swope, Honolulu, Hawaii, for defendant, First Nat. Bank of Hawaii.

Pratt, Moore, Bortz & Vitousek, Daniel H. Case, Honolulu, Hawaii, for defendant, Cooke Trust Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW UPON DEFENDANTS' MOTION TO DISSOLVE STAY

LINDBERG, District Judge.

This matter having come on to be heard on the Motions of the defendants herein for an order to vacate and dissolve the stay of the effectiveness of the approval by the Federal Deposit Insurance Corporation and by the comptroller of the Currency of the Merger of Cooke Trust Company, Limited, hereinafter called "Cooke Trust", one of the defendants herein, with and into First National Bank of Hawaii, hereinafter called "the Bank", the other defendant herein, which stay arose pursuant to Section 18(c) (7) (A) of the Federal Deposit Insurance Act, as amended, and based upon the affidavits of Gilbert W. Root and Dan E. Dorman, respectively, and also based upon the testimony adduced from Gilbert W. Root, the Court having considered the same and being now fully advised in the premises and for good cause appearing, the Court makes the following:

### FINDINGS OF FACT

1. The Bank is a national banking association organized under and pursuant to the National Bank Act of the United

2. The Bank is authorized and empowered to exercise fiduciary powers, and in particular to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity, and has been so authorized and empowered at all times since April 24, 1920, when the Board of Governors of the Federal Reserve System (then designated the Federal Reserve Board) issued a certificate of such authority to the Bank, which authorization was continued in force upon the transfer of jurisdiction of the exercise of fiduciary powers by national banking associations from the Board of Governors of the Federal Reserve System to the Comptroller of the Currency of the United States of America by Public Law 87–722 (12 U.S.C. § 92a).

3. Cooke Trust is a state trust company incorporated under the laws of the State of Hawaii in the year 1932 and since that date is and has been qualified to act as a trust company.

4. The Bank does not now exercise, and has not at any time since April 24, 1920, exercised, any fiduciary powers pursuant to said certificate of authority or otherwise, and does not now conduct and has not since April 24, 1920, conducted a trust business.

5. Prior to July 12, 1965, banks organized under the laws of the State of Hawaii, hereinafter called "State banks," were not permitted by the laws of the State of Hawaii to act as executor, administrator, guardian, assignee or receiver, or engage in the business of acting as trustee for the management and investment of funds of other persons.

6. On July 12, 1965, the Governor of the State of Hawaii approved Act 273 of the Session Laws of Hawaii 1965 (Exh. C–1), which act, hereinafter referred to as "Act 273", among other things, au-

thorized State banks to engage in the trust business, authorized State trust companies to merge into State Banks or national banking associations, provided that the resulting State bank or national banking association would, as a result of the merger of a State trust company into such State bank or national banking association, automatically and by operation of law succeed to all fiduciary relationships held by such State trust company, and forbade State trust companies, after June 30, 1970, to engage, directly or indirectly, in the business of acting as a real estate broker, stock broker or insurance agent.

7. On July 12, 1965 Cooke Trust, in addition to engaging in the trust business was also, directly or indirectly, engaged in the business of acting as a real estate broker, stock broker and insurance agent.

8. Subsequent to July 12, 1965, Cooke Trust and the Bank negotiated an agreement which culminated in an agreement dated December 15, 1965, for the merger of Cooke Trust with and into the Bank, which agreement was negotiated on the basis of valuing Cooke Trust at the sum of the liquidating values of the corporate assets of Cooke Trust, that is to say, on the basis of the aggregate of the fair values of the respective corporate (as distinct from fiduciary) assets of Cooke Trust, less the federal and state capital gains taxes which would have been applicable if such assets had been sold for cash at such fair values, and without assigning or allowing any value or consideration for good will, going concern value, wills of living testators in which Cooke Trust was named an executor or trustee or both, life insurance trusts created by person still living of which Cooke Trust was a trustee, or present or future earnings prospects, save and except for the business of the former Cooke Mortgage Company, Inc. (a former subsidiary which was merged into Cooke Trust on May 31, 1966), which business was valued under formulae generally and widely accepted in the mortgage servicing trade.

9. That by merging with the Bank rather than liquidate, the shareholders of Cooke Trust achieved three specific purposes:

(1) Secured for its 84 officers and employees positions with the Bank without reduction of their corporate titles (save for Mr. Root), without reduction of salaries and with full recognition that prior service with Cooke Trust would be recognized as prior service with the Bank insofar as employee benefit programs are concerned;

(2) fulfilled an obligation to the clientele of Cooke Trust by providing continuity of service to persons who had entrusted their affairs to Cooke Trust; and

(3) permitted shareholders the option of holding stock in the Bank and deferring recognition of capital gains or of selling such stock and generating capital gains at the time of such sale.

10. That shortly after the passage of Act 273, and while preliminary merger negotiations with the Bank were in process, Cooke Trust sought favorable opportunities for the disposition of its non-permitted activities under Act 273 (real estate brokerage, stock brokerage and insurance agency); that Cooke Trust was apprehensive about delaying disposition of such activities because its bargaining position might be severely handicapped if prompt action were not taken; that Cooke Trust made preliminary arrangements for such disposition prior to entering into said Merger Agreement and therefore it was able to agree to and effectuate early disposition of such non-permitted assets as part of its covenants under said Merger Agreement.

11. The agreement for the merger of Cooke Trust with the Bank was embodied in a Merger Agreement dated December 15, 1965, hereinafter called the "Merger Agreement", a true copy of which is marked Exhibit A and attached to the Bank's motion herein.

12. The Merger Agreement was duly approved by the Board of Directors of Cooke Trust at a meeting of that Board held December 15, 1965, was duly ap-

proved by the Board of Directors of the Bank at a meeting of that Board held December 17, 1965, and was duly executed by the Bank and Cooke Trust by their respective Presidents and by a majority of their respective Boards of Directors.

13. Under date of December 28, 1965, the Bank made application to the Federal Deposit Insurance Corporation for prior written consent to effect the merger of Cooke Trust with the Bank under the Merger Agreement, pursuant to Section 18(c) of the Federal Deposit Insurance Act (12 U.S.C. § 1828(c)), as amended and then in force.

14. Under date of December 28, 1965, the Bank made application to the Comptroller of the Currency of the United States of America for approval of the merger of Cooke Trust with the Bank under the Merger Agreement pursuant to Section 2 of Chapter 209 of the Act of Congress of November 7, 1918, as amended (12 U.S.C. § 215a).

15. By letter dated December 29, 1965, a true copy of which (less enclosures) is marked Exhibit B and attached to the Bank's motion herein, legal counsel for the Bank advised the Attorney General of the State of Hawaii of the proposed merger of Cooke Trust with the Bank, advised said Attorney General that in the opinion of said legal counsel the proposed merger did not violate any of the provisions of the Hawaii Anti-Trust Law (Act 190, Session Laws of Hawaii 1961), and inquired whether the Attorney General of the State of Hawaii concurred in that opinion.

16. On January 17, 24 and 31, 1966, and on February 7, 14 and 16, 1966, the Bank and Cooke Trust published notice of the proposed merger of Cooke Trust with the Bank, in The Honolulu Advertiser, a newspaper of general circulation published in the City and County of Honolulu, State of Hawaii (that being the city and county in which each of the Bank and Cooke Trust has its head office), pursuant to the above mentioned Section 18(c) of the Federal Deposit Insurance Act.

17. At an annual meeting of the shareholders of the Bank duly called, noticed and held on February 18, 1966, the merger of Cooke Trust with the Bank pursuant to the Merger Agreement was approved, ratified and confirmed by the affirmative vote of the holders of 635,-358, or 90.76%, of the 700,000 outstanding shares of common stock of the Bank, being more than the two-thirds thereof required by law.

18. At an annual meeting of the shareholders of Cooke Trust duly called, noticed and held on February 23, 1966, the merger of Cooke Trust with the Bank pursuant to the Merger Agreement was approved, ratified and confirmed by the affirmative vote of the holders of 29,252, or 97.51%, of the 30,000 outstanding shares of capital stock of Cooke Trust, being more than the two-thirds thereof required by law.

19. On February 22, 1966, the President of the United States approved the Bank Merger Act Amendment of 1966, Public Law 89–356, amending the above mentioned Section 18(c) of the Federal Deposit Insurance Act.

20. That subsequent to the execution of said Merger Agreement and pursuant to the provisions thereof Cooke Trust converted all of its corporate assets which were not legal investments for national banking associations into assets which are legal investments for such national banking associations and, as a result, Cooke Trust's corporate assets now consist solely of cash, cash items, loans and advances, marketable United States Government, State and municipal securities, furniture, furnishings and equipment and real property, upon a portion of which its principal office exists; that it incurred federal and state capital gains taxes in order to accomplish the same.

21. Subsequent to the meeting of its shareholders referred to above, the Bank expanded the sixth and seventh floors, and finished and furnished the eighteenth floor, of its banking house at 165 South King Street in Honolulu, Hawaii; removed its executive offices and administrative headquarters from the second

floor of its banking house at 161 South King Street in Honolulu, Hawaii, to the eighteenth floor at said 165 South King Street; removed its Consumer Credit Administration, Branch Administration, Loan Adjustment and Marketing departments from the second floor of said 161 South King Street to other locations·at said 165 South King Street or said 161 South King Street; and remodeled and refurnished the second floor of said 161 South King Street to accommodate its Trust Division which was to result from the merger of Cooke Trust with the Bank; all at a cost to the Bank of upwards of $400,000.

22. By letter dated May 2, 1966, a true copy of which is marked Exhibit C and attached to the Bank's motion herein, the Attorney General of the State of Hawaii advised the Bank and Cooke Trust that the office of the Attorney General of the State of Hawaii had reviewed the proposed merger of Cooke Trust with the Bank and, under the facts made available to that office, contemplated no adverse legal action at that time.

23. By letter dated May 12, 1966, a true copy of which is marked Exhibit D and attached to the Bank's motion herein the Federal Deposit Insurance Corporation advised the Bank that on May 12, 1966, the Federal Deposit Insurance Corporation approved the merger of Cooke Trust with the Bank, upon condition, among others, set forth in said letter that the merger not be effected before the thirtieth day after such approval, namely, June 11, 1966.

24. By radiogram dated May 12, 1966, a true copy of which is marked Exhibit E and attached to the Bank's motion herein, the Office of the Comptroller of the Currency of the United States of America advised the Bank that on May 12, 1966, the Comptroller of the Currency of the United States of America approved the merger of Cooke Trust with the Bank, upon condition, as set forth in said radiogram, that the merger not be effective before the thirtieth day after such approval, namely, June 11, 1966.

25. By letter dated May 26, 1966, the Bank requested the Office of the Comptroller of the Currency of the United States of America to fix the close of banking hours in Honolulu, Hawaii, on June 24, 1966, as the time and date at and on which the merger of Cooke Trust with the Bank should become effective, and by letter dated June 1, 1966, the Office of the Comptroller of the Currency of the United States of America advised the Bank that said Comptroller's certificate that said merger was effective would be issued on or about June 17, 1966, and should be received by the Bank prior to June 24, 1966.

26. On June 10, 1966, the plaintiff herein filed this action in this Honorable Court, alleging, among other things, that the merger of Cooke Trust with the Bank pursuant to the Merger Agreement may be substantially to lessen competition or to tend to create a monopoly in violation of Section 7 of the Clayton Act (15 U.S. C. § 18), and caused a summons and a copy of the complaint herein to be served upon the Bank and Cooke Trust.

27. By the terms of the above mentioned Bank Merger Act Amendment of 1966, the commencement of this action stayed the effectiveness of the approval by the Federal Deposit Insurance Corporation of the merger of Cooke Trust with the Bank unless and until this Court has otherwise specifically ordered.

28. In the absence of an effective approval thereof by the Federal Deposit Insurance Corporation, Cooke Trust cannot lawfully and validly be merged with the Bank pursuant to the Merger Agreement, and accordingly the commencement of this action has delayed and will delay the effectuation of the merger unless and until this Court has otherwise specifically ordered.

29. That subsequent to Cooke Trust's having entered into said Merger Agreement it had sought and obtained notice from the Attorney General of Hawaii to the effect that he intended to take no action with regard to the proposed merger;

that although no formal approval of said merger had been obtained from the requisite banking regulatory agencies, to wit, Federal Deposit Insurance Corporation, the Board of Governors Federal Reserve System and the Comptroller of the Currency, Cooke Trust and the Bank assumed in good faith that such approval would be given and proceeded upon the assumption that the merger was properly within the objectives of Act 273 and not violative of state or federal law in any respect.

30. That it is doubtful that Cooke Trust would be able to earn sufficient profits from its trust business and the related business activities which will be permitted under Act 273 to the extent that it would be economically feasible for it to continue in existence for a period in excess of a period of one to two years if the stay were not dissolved and the merger were not permitted to be consummated; that if Cooke Trust were to continue in business in its present condition and without diminution in business or in staff, it would earn an estimated net profit of approximately $39,000, which sum would represent a return of about 1.5% on its value for liquidation purposes of approximately $2,500,000; that if Cooke Trust did continue in business it would probably suffer a diminution in both its business and its staff; that if the automatic stay in this case is not lifted, Cooke Trust will in all likelihood discontinue business and liquidate.

31. That no bank in Hawaii except the Bank proposed a merger with Cooke Trust; that it is doubtful if a merger with any other bank except Bank of Hawaii would have been feasible and Bank Bank of Hawaii did not propose a merger; that it is doubtful if any of the smaller banks in Hawaii would have been able to absorb Cooke Trust as a unit and consequently would not have been able to adequately take care of the staff and clientele of Cooke Trust.

32. That if said stay is not dissolved and the merger not permitted to be consummated in the near future, and even if Cooke Trust were not liquidated, Cooke Trust would have difficulty retaining the business of its present clients because of the uncertainty of the future of Cooke Trust and for the same reason would have difficulty in obtaining prospective clients for its service; as of May 31, 1966, Cooke Trust was acting as agent for 245 accounts, was acting as property manager for 145 accounts and was acting as trustee for 167 trusts which were either revocable or wherein some party reserved or had reserved to him or her the power to remove Cooke Trust as trustee and appoint a successor trustee and said uncertainty as to its future would probably jeopardize its continued appointment in many of these instances.

33. That Cooke Trust, over the course of 34 years since it was founded in 1932, has built up a highly skilled staff of specialists in the field of trust administration, property management and other related fields; that said uncertainty as to the future of Cooke Trust would seriously hamper its ability to retain and augment said staff; that as of May 31, 1966, Cooke Trust had 84 officers and employees; that if the merger is not permitted to be consummated and if Cooke Trust were liquidated, the employment of said 84 persons would be terminated, whereas if the stay is dissolved and the merger is permitted to be consummated in the near future, the continued employment of said 84 persons would appear to be assured.

34. Any substantial delay in the effectuation of the merger of Cooke Trust with the Bank pursuant to the Merger Agreement will cause undue hardship and irreparable injury to the Bank and Cooke Trust in the following ways, namely—

A. That if said stay is not lifted and Cooke Trust is liquidated, the Merger Agreement will be terminated and both parties will lose the benefits of the Merger Agreement for which they contracted.

B. That if said stay is not lifted and Cooke Trust continues in business during the determination of this action, the uncertainty of the future of Cooke Trust will probably result in the dwindling of its staff to such an extent that the Bank

will probably fail to benefit from one of the valuable considerations for which it bargained in negotiating the Merger Agreement.

C.  That if said stay is not lifted and Cooke Trust continues in business during the determination of this action, the uncertainty of the future of Cooke Trust will probably result in the dwindling of its business to such an extent that the parties will have lost one of the valuable considerations for which they bargained in negotiating the Merger Agreement.

35.  That for the foregoing reasons Cooke Trust particularly, and the Bank to a lesser degree, would suffer irreparable injury if the automatic stay in this case were not dissolved in order to permit said merger to be promptly consummated.

From the foregoing findings of fact the court makes the following:

## CONCLUSIONS OF LAW

1.  This court has jurisdiction of this matter under 28 U.S.C.A. Section 1337, 15 U.S.C.A. Sections 18 and 25, and 12 U.S.C.A. § 1828(c) (7) (A).

■■  2.  Under the provisions of 12 U.S.C.A. § 1828(c) (7) (A), this court is required upon a proper showing to exercise a sound discretion in determining whether the stay of an authorized approval of a merger transaction by the responsible federal agency or agencies should continue after the filing of an action brought under the anti-trust laws, or dissolved, considering among other matters first, irreparable injury, if any, that may be suffered by the parties affected; second, the probabilities of a final entry of an order of divestiture; and third, the likelihood of a prompt and effective accomplishment of such an order.

3.  The merger transaction of Cooke Trust Company, Limited, and First National Bank of Hawaii was duly authorized as required by the provisions of Section 18(c) of the Federal Deposit Insurance Act as amended by Bank Merger Act of 1966, Public Law 89–356 and the National Bank Act, 12 U.S.C.A. Section 215a.

■  4.  Irreparable injury will be suffered by defendants as noted in the foregoing findings of fact should the statutory stay continue in effect, assuming the merger is lawful and is not permanently enjoined by a final decree herein.

5.  There is substantial doubt as to whether the United States of America will prevail in its efforts to secure a final decree enjoining the merger contemplated by the defendants.

■  6.  The relief sought by the United States in this action will not be jeopardized by dissolution of the automatic stay herein because if the United States is ultimately successful in its prosecution of this litigation, the divestiture which it seeks in this case would be capable of successful and effectual accomplishment; first, for the reason that the Bank presently has no trust department and so there would be no merger of Trust accounts and therefor would not call for subsequent reallocation of accounts; second, for the reason that existing bank regulations require all banks to maintain separate accounts for their trust activities as opposed to their banking activities and therefor all trust accounts and activities would be easily identified; and third, a suitable order may be framed and issued by the court to assure a prompt, effective divestiture.

7.  A suitable order will be entered vacating and dissolving the stay of the effectiveness of the approval by the Federal Deposit Insurance Corporation and Comptroller of the Currency of the United States of America of the merger of Cooke Trust Company, Limited, one of the defendants, with and into First National Bank of Hawaii, one of the defendants herein, which stay arose pursuant to Section 18(c) (7) (A) of the Federal Deposit Insurance Act as amended, upon the filing of this action; that said order be so conditioned as to bring about an effective and timely divestiture in the event a final decree so providing is entered and sustained.